On Rehearing.
Blanchard, J.
The town of Lafayette, a municipal corporation in the State of Louisiana, was in need of waterworks and an electric light plant. The ordinary revenues of the town were inade *1773 quate for the procurement of these desirable improvements; whereupon the taxpaying citizens of the town took counsel together, and decided to resort'to the levying of a special tax as a means of raising the funds essential for the purpose mentioned. They found in Art. 209 of the Constitution of the State, and in Act No. 126 of the acts of 1882 (carrying into effect said article of the Constitution), the authority for the levy of the special tax. In accordance with the manner pointed out by the act of the Legislature, they proceeded to. the accomplishment of their purpose. A petition was addressed to-the Mayor and town council setting forth the urgent public necessity of procuring a water supply for the town and the means of lighting its streets, and declaring that the rate of ordinary taxation permitted by law was insufficient for the purpose. It prayed for a special tax of five mills annually for a term of ten years on the assessed valuation of property in the town, to meet the cost of 'the construction and operation of said improvements; and to this end,, llie petition asked that a special election be held to take the sense of the property taxpayers of the town on the proposed increase of taxation for the purpose named. This petition was signed' by the requisite number of the taxpayers of the town. On receiving it, the town council promptly acted. An ordinance was adopted ordering the special election, and it took place on March 23, 1896. There-was a unanimous vote in favor of the proposition. Thereupon the council passed an ordinance levying the special five-mill tax for ten years, to be extended annually upon the assessment rolls of the-town. The tax having been voted by the taxpayers, and formally-levied by the town council, the next step was to utilize its prospective avails, to the end of securing the construction of the public-improvements contemplated.
It seems that parties were willing to take the contract, and trust to the tax for payment, provided it (the tax) could be put in funded form; i. e., negotiable bonds representing the tax, and redeemable-with the proceeds of its collection. In this form the contractors-could more easily'utilize the obligation resulting from the levy of the tax; that is to say, they could, more readily raise money on bonds-based upon the tax with which to carry out the contract than they could upon the incorporeal right to the tax as levied and extended on the assessment rolls. And the town authorities found they could more advantageously contract for the public improvements desired *1774 if permitted to merge the tax obligation into the form of negotiable ■'bonds than they could by the mere pledge or hypothecation of the tax itself. So it was determined to fund the indebtedness represented by the tax. But, at the threshold, the authorities were met >with the difficulty of the want of legal authority in themselves to iissue bonds based upon the tax. The Legislature of the State was about to convene, and it was decided to petition that body to pass :an act granting the necessary power in the premises. Due public notice was given of the intention to apply for the passage of the act and the application was made; whereupon the General Assembly did enact a law entitled “An act to authorize and empower the City Council of Lafayette, Louisiana, to issue bonds for the sum of thirty-height thousand dollars, payable not later than ten years from date thereof, to procure, construct and operate a waterworks and electric'light plant in said town, fixing the method of payment,” etc., toeing Act No. 90 of 1896. Invested by this act with the authority to issue bonds, the town council entered into an agreement and contract with the relator, by which the latter obligated himself to con - ¡struct the public improvements referred to, according to certain plans and specifications adopted by the council, and to receive in (payment therefor bonds of the corporation in the aggregate amount ¡of thirty-six thousand dollars, to be delivered in three installments of ten thousand dollars each, as the work progressed, and :a fourth and last instalment of six thousand dollars, thirty •days after the work had been completed, tested and accepted. The contract having been signed, and the relator ready to proceed with its execution, another ordinance was adopted by the •town council authorizing and directing the mayor, who had been .-named in the act of the Legislature as the official to perform ■that duty, to sign the lithograph bonds of the corporation, and to issue the same to the relator, as provided for in the contract. This •ordinance was promptly vetoed by the mayor, on the ground that the act of the Legislature authorizing the issuance of the bonds is unconstitutional. Thereupon, by unanimous vote of the council, the ordinance was passed over the mayor’s veto, and this was followed by the declaration of the mayor, in open session, that a two-thirds vote of the council having been cast therefor, the ordinance was ■adopted notwithstanding the veto. Still, the mayor persisted in his refusal to sign and issue the bonds. This suit was then instituted to *1775 ■compel by mandamus his performance of this duty. In his answer the mayor admits his refusal to sign and issue the bonds, and justifies the same on the ground that the town of Lafayette is without authority under its charter and the general statutes of the State, to issue bonds for electric lights and waterworks, or for any other purpose whatever. He sets up that Act No. 90 of the acts of 1898, in effect amends the charter of the corporation, and, moreover, confers on it a special right or privilege, by legislation local in its application, in direct contravention of the provisions of Art. 46 of the Constitution. He prays that the act be declared unconstitutional, null and void, and that the writ of mandamus be denied. From a judgment in the court below making the writ peremptory, and ordering him to sign and issue the bonds, the mayor appeals.
The judge a quo did not pass upon the constitutionality vel non of Act 90 of 1896, placed directly at issue by the answer of the mayor. He held that the ordinance of the town council, directing the mayor to sign and issue the bonds, having been passed over his veto, he (the mayor) was without further reason to object to the performance of that duty; also, that the act of the Legislature assailed, having been passed at the solicitation of the mayor and council, they can not be heard to allege its unconstitutionality. The ■constitutionality of this act having been squarely put at issue by the respondent, we think it should have been met in the judgment rendered below. If the act be constitutional, bonds such as it contemplates should be signed; if unconstitutional, they should not be signed, even though there be force in the two grounds upon which the judge a quo based his decree. It is to the interest of the public to have a decision upon the constitutionality of the enabling act. This much of the controversy, at least, should' be settled, and the pleadings invite its settlement.
The contention of the respondent is that Act 90 of 1896, under •which it is proposed to issue the bonds, is unconstitutional, because in effect amending the charter of the town, and because conferring a special right or privilege on the corporation by special or local legislation. Can this act be regarded as one amending or extending the charter in the sense of Art. 48 of the Constitution? Or is it open to the objection that it confers a prohibited special right or privilege? We think not. Suppose the Legislature, in enacting Act 126 of 1882, to make effective Art. 209 of the Constitution, had added *1776 another section authorizing parishes and incorporated towns to issue-evidences of debt, such as negotiable bonds, based upon and representing the special taxes voted in aid of works of public improvement, the better to utilize and make available such tax obligations, could it be urged against such clause of the law that it in effect amended the charters of all cities and towns in the State by-adding a new and important power not hitherto possessed? Clearly not. It would not be considered at all in the light of an amendment to existing municipal charters. It would rather be held to be a further and legitimate means of rendering effective the grant of power contained in Art. 209, under which works of public improvement can be undertaken. If this be so, then neither can the grant of this authority in a special act to a particular municipality be regarded as-amending the charter of such corporation. It is only a temporary power extended for a given purpose, the execution of which exhausts the power — a power not to issue bonds generally, but to issue bonds-in aid of a particular purpose, that purpose being already permitted by Art. 209 of the Constitution.
It follows that such grant of authority in a special or local law must be upheld, unless it can be shown that the Legislature is without authority, under the Constitution, to enact special or local laws-for such purpose, and may do so only by general statute. And this-brings us to the consideration of Art. 46 of the Constitution, and to-the inquiry if a local or special law for such purpose is prohibited by said article. We have shown that the twelfth paragraph of Art. 46,. which reads: “Creating corporations, or amending, renewing, extending or explaining the charter thereof,” does not apply, for the act under review can not be regarded, in any true sense, as one amendatory of the charter of the town of Lafayette, within the meaning of this paragraph. The only other paragraph of the article that need be considered in this connection is the thirteenth, which reads: “ Granting to any corporation, association or individual any special or exclusive right, privilege or immunity.”. It seems clear that “ corporation,” as here used, means private, and not public or municipal corporations. Its connection in the text with the words “ association or individual,” shows this. The General Assembly shall not pass any local or special law “ granting to any [private] corporation, association or individual any special or exclusive rig ht privilege or immunity.” This is also apparent from a consideration *1777 of the paragraph immediately preceding it, which plainly refers to municipal corporations, and in which the framers of the Constitution inserted all the prohibitions intended to affect such corporations, proceeding in the paragraph following to deal with private corporations. Not all local or special laws are prohibited by Art. 46, but only such as are clearly within its terms. Local or special laws not within its terms may be enacted on publishing notice of intention to apply therefor, as set forth in Art. 48 of the Constitution. If Act 90 of 1896 be a local or special law, then it is one of those referred to in the article of the Constitution last mentioned, and, therefore, constitutional and valid. It authorizes the contracting of no debt on part of the corporation of Lafayette. The debt had already been authorized by vote of the taxpayers and contracted by the town council pursuant thereto. All the act of the Legislature did was to authorize the corporation to put this debt in such shape that it could be utilized to greater advantage in securing desirable municipal improvements. Under its terms the town of Lafayette may legally issue bonds to an amount within the aggregate sum of the tax voted in aid of the public improvements hereinbefore mentioned. Holding that bonds as contemplated by Act 90 of 1896, based upon the special tax of five mills voted by the taxpayers of the town and levied by the town council thereof, and payable, principal and interest, out of the proceeds of said tax, may be lawfully issued, we express no opinion as to the particular kind of bonds that may be thus issued in respect of the recitals thereof, this not being a matter of contestation between the parties to this litigation.
For the reasons herein assigned, it is ordered that the judgment hereinbefore rendered by this court be set aside, and it is now ordered and decreed that the judgment appealed from be amended as follows : That the mandamus prayed for be made peremptory, and that Charles D. Caffery, mayor of the town of Lafayette, be and is hereby required and commanded to sign in his official capacity, the bonds of the corporation of Lafayette, authorized by Act No. 90 of the acts of 1896, prepared in fulfilment of its requirements, as interpreted and expounded by this opinion, and that, as thus amended, the said judgment be affirmed; costs of appeal to be paid by relator.
Miller, J. I concur in the decree.